UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ALEXA BRENNEMAN** | : | **CASE NO: 1:14-cv-136** |
| c/o Goldenberg Schneider, LPA | | |
| One West Fourth Street, 18th Floor | : | **JUDGE** |
| Cincinnati, OH 45202 | | |
| | : | |
| individually, and on behalf of all those | | |
| similarly situated, | : | |
| | | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | : | |
| | | |
| vs. | : | |
| | | **(WITH JURY DEMAND)** |
| **CINCINNATI BENGALS, INC.** | : | |
| c/o Michael Brown | | |
| One Paul Brown Stadium | : | |
| Cincinnati, OH 45202 | | |
| | : | |
| Defendant. | | |

All allegations made in this Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Class Action Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I. PRELIMINARY STATEMENT

1. The Cincinnati Bengals current website, www.bengals.com, states that "[t]he Cincinnati Ben-Gals have played a major role in the Bengals organization year after year since 1968. On the field, these ladies perform in front of more than 64,000 fans at Paul Brown Stadium. When they are not cheering on the team, they are spending countless hours practicing, exercising and volunteering for community and charity events throughout the tri-state. The Ben-Gals have appeared at charity functions, conventions, grand openings, trade shows, and other

charitable and civic causes each year. These ladies are young professionals who are not only involved in their own careers, but they are involved in many hours per week working for the Bengals organization within the community."[1]

2. These statements are largely accurate – the Ben-Gals are required to attend at least 6-8 hours of mandatory practices every week from late May through December, are required to appear at no fewer than 10 "charity"[2] functions a season, and must pose for and promote a Ben-Gals calendar. In fact, according to the official Cincinnati Ben-Gal Rules, "[t]he Cincinnati Ben-Gals do more outside appearances than on the field appearances."[3]

3. When all of the mandatory practice time, public appearance time, time spent at Paul Brown stadium on game days, and time posing for and promoting the Ben-Gals calendar are added together, the Ben-Gals spend well over 300 hours a year "working for the Bengals organization."

4. Yet despite the fact that Defendant admits the Ben-Gals spend these "many hours per week working for the Bengals organization," Defendant only compensates them, at most, $90 for each home football game at which they cheer.

5. Plaintiff was a Ben-Gal cheerleader during the 2013 season, and as such was an employee of Defendant. Plaintiff worked well in excess of 300 hours for Defendant, and appeared at 10 home games during the 2013 season, but Defendant only paid her a total of $855, a pay rate of less than $2.85 per hour.

6. In 2013, the Ohio minimum wage was $7.85 an hour.

---

1 *See* www.bengals.com/cheerleaders/auditions.html, last accessed February 10, 2014.
2 As discussed in more detail below, "charity" is loosely defined to include not only traditional charities, but also promotional appearances serving no charitable purpose whatsoever.
3 *See* Cincinnati Ben-Gals Rules, attached as Exhibit B.

2

7. Unlike the Defendant, the 2013-14 Super Bowl Champion Seattle Seahawks organization compensates their team cheerleaders, the Sea Gals, at "an hourly wage and any applicable overtime required by law, for all hours worked."[4]

8. Furthermore, the only other professional sports franchise in Ohio that employs cheerleaders, the Cleveland Cavaliers of the National Basketball Association, pays its cheerleaders for "rehearsals, games, appearances/promotions and dance clinics."[5]

9. Plaintiff, a former non-exempt employee of Defendant, brings this action against Defendant because she and all other current and former Ben-Gal cheerleaders were unlawfully denied minimum wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Article II, Section 34a of the Ohio Constitution, and the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq*.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216. In addition to the named Plaintiff's individual claims, this action is filed as and intended to be a "collective action" as authorized by the Fair Labor Standards Act. Federal jurisdiction is invoked in this instance to secure protection and to redress deprivations of rights under the statutes of the United States, specifically including the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

11. Plaintiff also seeks an exercise of this Court's Supplemental Jurisdiction as to the Ohio State law claims under 28 U.S.C § 1367.

---

[4] *See* http://prod.static.seahawks.clubs.nfl.com/assets/2013/sea-gals/html/auditions/rules.html, last accessed February 10, 2014.
[5] *See* http://www.nba.com/cavaliers/dance/cavalier_girls_auditions.html, last accessed February 10, 2014.

12. The actions complained of by Plaintiff occurred within the Western Division of the Southern District of Ohio. Accordingly, venue with this Court is appropriate.

### III. PARTIES

13. Plaintiff Alexa Brenneman is a citizen of the United States who resides in Hamilton County, Ohio. Ms. Brenneman is a citizen of the State of Ohio.

14. Plaintiff was employed by Defendant as a Ben-Gal cheerleader from approximately May 2013 through January 2014. Ms. Brenneman has signed a consent to participate in this action in accordance with 29 U.S.C. § 216(b), which is attached as Exhibit A.

15. Defendant Cincinnati Bengals, Inc. is a for-profit Ohio Corporation first registered with the Ohio Secretary of State in 1980. The Cincinnati Bengals organization was the employer of Plaintiff and members of the proposed Class within the meaning of 29 U.S.C. § 203(d).

### IV. STATEMENT OF FACTS

16. Defendant is a professional football franchise that employs approximately 30 cheerleaders each football season to "[r]epresent the Cincinnati Bengals organization by actively supporting the team, values, and goals of the Club."[6]

17. Defendant is a member of the National Football League, an organization that includes a revenue-sharing program that spreads television royalties across the league.

18. However, the money that Defendant earns from Ben-Gal cheerleader calendar sales[7] and Ben-Gal cheerleader promotional appearances[8] remains with Defendant and is not

---

6 *See* www.bengals.com/cheerleaders/auditions.html, last accessed February 10, 2014.
7 The Ben-Gals Cheerleader Calendar is sold at Paul Brown Stadium and is available at http://proshop.bengals.com/Cheerleader-Calendar-%2713-%2714-CHEERCAL13/, last accessed February 10, 2014.
8 *See* www.bengals.com/cheerleaders/appearance-requests.html, last accessed February 10, 2014.

shared with the rest of the league. A 2003 Forbes Magazine article estimated that the extra revenue generated by a cheerleader squad such as the Ben-Gals amounts to "just over $1 million a season."[9]

19. Upon information and belief, Defendant has employed approximately 50 different Ben-Gal cheerleaders during the 3 years preceding the filing of this lawsuit.

20. Plaintiff is one of those approximately 50 Ben-Gal cheerleaders.

21. In early 2013, Plaintiff decided to try out for the Ben-Gals cheerleading squad.

22. To improve her chances of making the squad, Plaintiff initially attended dance classes at Paul Brown Stadium in February, March, and April of 2013.

23. Plaintiff then attended tryouts in May, 2013 and was informed that she made the squad on or around May 25, 2013.

24. After making the squad, Defendant provided Plaintiff with a W-4 and an "Authorization Agreement for Payroll Direct Deposit" by the Cincinnati Bengals, Inc. She was instructed to return the direct deposit authorization form to Johanna Kappner, Controller of the Cincinnati Bengals, Inc.

25. After completing these and other papers, Plaintiff was hired by Defendant to work as a Ben-Gal cheerleader during the 2013 football season.

26. Plaintiff was then provided with a copy of the Cincinnati Ben-Gal Rules.

27. As a condition of her employment with the Defendant, and as set forth in the Cincinnati Ben-Gals Rules, Plaintiff agreed to restrictions on her ability to take other jobs,

---

[9] *See Pom-Pom and Profits*, available at http://forbes.com/forbes/2003/0915/084.html, last accessed February 10, 2014.

including "[t]eaching outside Bengals affiliation," and "dancing or performing with any other group …."[10]

28. The Cincinnati Ben-Gal Rules emphasize that practices are mandatory and failure to attend and participate will result in being forced to "sit out" games. This threat of punishment is particularly severe because the only time a Ben-Gal gets paid is for appearing at games.

29. For example, Plaintiff missed one game during the 2013-14 season to attend a funeral and was not paid anything for that week.

30. According to the Rules, "You may miss only 4 practices the entire season. Two tardy practices equal an absence. 16 minutes (or more) late equals an absence. Technically, 4 absences and 1 tardy can be missed. A total of 5 absences results in termination. Exemption: Your wedding."[11]

31. The Ben-Gals are required to practice at Paul Brown Stadium from 7-10 p.m. Tuesdays and Thursdays during the season, with additional practices required during the pre-season, and additional practices required for rookies (such as Plaintiff). However, because the Ben-Gals are required to "weigh-in"[12] prior to practices, and practice in full hair and makeup, they must arrive well before 7:00. Plaintiff was never paid for any of the practices Defendant required her to attend.

32. The time that Plaintiff and the other Ben-Gal cheerleaders spent at practices was and is "working time" within the meaning of 29 C.F.R. § 785.27 because, *inter alia*, attendance was not voluntary pursuant to 29 C.F.R. § 785.28.

---

10 *See* Cincinnati Ben-Gals Rules, attached as Exhibit B.
11 *See* Exhibit B.
12 Ben-Gals are weighed twice a week and must stay within 3 pounds of their "goal weight" or face discipline, including mandatory "extra conditioning" after practices, being "benched for weight violations," probation, and ultimately dismissal from the team. *See* Exhibit B.

6

33. In addition to mandatory practices, Ben-Gals are required to attend mandatory "charity events." Plaintiff attended, and was not paid for, ten such events. While some of these events were in fact legitimate "charity events," others were purely designed to promote the Cincinnati Bengals organization. For example, during one such "charity event," Plaintiff travelled to Lexington, KY to make a promotional appearance at a Lexington television station.[13] The length of the mandatory charity events varied, but averaged approximately four hours.

34. The time Plaintiff and the other Ben-Gal cheerleaders travelling to and attending "charity events" was and is "work time" within the meaning of 29 C.F.R. § 785.44 because it was performed at Defendant's request and/ or under Defendant's direction and control.

35. While Ben-Gals are led to believe that they will supplement their meager compensation through paid appearances, Plaintiff made only one paid appearance, lasting several hours, for which she was compensated at the "charity rate" of $75. Yet upon information and belief, the Cincinnati Bengals charge approximately the same rate for their cheerleaders to appear at events as other NFL organizations, or around $300 an hour.[14]

36. Plaintiff was also required to pose for and promote the 2013-4 Cincinnati Ben-Gals calendar. Plaintiff was not paid for the time she spent modeling for the photographs, or the time she was required to promote the Calendar at events such as the Calendar Release Party.

---

13 A television commercial created during that promotional visit is available at http://vimeo.com/73250126, last accessed February 10, 2014.
14 *See, e.g.,* http://www.baltimoreravens.com/ravenstown/cheerleaders/appearances.html ($300 an hour per cheerleader for corporate events); http://www.titansonline.com/cheerleaders/cheerleader-appearances.html ($300 per hour per cheerleader); http://www.colts.com/cheerleaders/cheerleader-appearances.html (2 cheerleaders for 2 hours is $850). All sites last accessed February 10, 2014.

37. On days that the Cincinnati Bengals played a home game, Plaintiff was required to arrive at Paul Brown Stadium several hours before kickoff and stay until after the game was completed.

38. For example, if the Bengals were playing a 1:00 p.m. home game, Plaintiff was required to meet the other cheerleaders in a local parking lot at 7:45 a.m. in full hair and makeup. The Ben-Gals would then carpool to the stadium and arrive at 8:00 a.m.

39. After arriving at the stadium, the Ben-Gals typically practice twice prior to the game. They also must meet with fans at times and stadium locations selected by the Defendant. As part of these appearances, they must sign autographs and take pictures with fans.

40. Although 30 Ben-Gals are on the squad, only 24 are selected to perform during a game.[15] The 6 Ben-Gals that are not chosen to cheer must still arrive at the stadium with the other Ben-Gals, and must go through the pre-game activities and drills.

41. However, if a Ben-Gal is not selected to perform at a given game, she must spend the first half of the game visiting with fans in the luxury suites. At halftime she is permitted to leave, but is encouraged to stay and help with on-field activities.

42. If a Ben-Gal does not cheer during the game, but performs the duties described above, she is paid $45 instead of the full $90.

43. Because Plaintiff missed a game to attend a funeral, she was not selected to perform during the following game. Although she worked no fewer than 6 hours that day, she was only paid $45, less than Ohio's minimum wage.

---

15 However, if Defendant believes that 24 Ben-Gals have not earned the right to cheer, it will utilize less than 24: "Practice and games are working sessions. Give 100% and don't just go through the motions or your position may be replaced or lost. 24 ladies cheer but less will be taken as necessary." *See* Exhibit B.

8

44. On the days that Plaintiff did cheer during the Bengals game, she left the stadium at approximately 5:00 p.m.

45. Even beyond the many uncompensated hours they work, Ben-Gal cheerleaders must expend their own money for transportation to and from mandatory appearances, and pay for specialized clothing (including required items such as certain shoes and tights, and a bathing suit for the calendar), makeup (including required items such as fake eyelashes), skin tanning, and other gear. Defendant's failure to pay for or reimburse the Ben-Gals for these required items further reduces their compensation below the minimum wage.

46. Even when Defendant does pay the Ben-Gal cheerleaders, it is not on a regular basis. Defendant only paid Plaintiff twice, on November 1, 2013 (over 22 weeks after the first mandatory practice and nearly 10 weeks after the first home game of the season) and January 10, 2014.

47. Ben-Gal cheerleaders are required to comply with all instructions and are not permitted to question "the person in authority." According to the Ben-Gal Rules, under the heading "Attitude and Behavior:"

- Insubordination- Webster defines this word as "not submitting to authority; disobedient." Syn. Rebellious, mutinous, defiant. **Insubordination to even the slightest degree IS ABSOLUTELY NOT TOLERATED!!! You will be benched or dismissed!!!**

- Authority- **ABSOLUTELY NO ARGUING OR QUESTIONING THE PERSON IN AUTHORITY!!!**[16]

48. Plaintiff followed Defendant's instruction not to question the person in authority, worked for Defendant for a full season, and then resigned at the end of the year.

---

16 *See* Exhibit B (emphasis in original).

9

49. The effect of Defendant's wage and hour policies and practices described above was to deny Plaintiff and every Cincinnati Ben-Gal cheerleader during the three years prior to the filing of this Complaint minimum wages in violation of 29 U.S.C. § 206, Article II, Section 34a of the Ohio Constitution, and O.R.C. § 4111.01, et seq.

50. Defendant was and is aware of the "countless hours" of work being performed by Cincinnati Ben-Gal cheerleaders at their direction and under their supervision. Despite this knowledge, Defendant has maintained its wage and hour policies and practices.

## V. COLLECTIVE ACTION ALLEGATIONS

51. Plaintiff brings the FLSA claims under 29 U.S.C. § 216(b) as a collective action on behalf of the following opt-in Class (the "FLSA Class"):

> All persons who were employed by Defendant as a Cincinnati Ben-Gal cheerleader at any time from February 10, 2011 through the present.

52. Plaintiff is similarly situated to all former and current Cincinnati Ben-Gals described in the FLSA Class.

## VI. CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and as representatives of a class of similarly situated individuals who have been subjected to Defendant's violations of the minimum wage provisions of Article II, Section 34a of the Ohio Constitution and Ohio's Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.* (the "Ohio Minimum Wage Class").

54. This class action is proper under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). The requirements of Rule 23(a), (b)(2), and (b)(3) are met with respect to the Ohio Class defined below:

> All persons who were employed by Defendant as a Cincinnati Ben-Gal cheerleader at any time from February 10, 2011 through the present.

55. Although the precise number of the Ohio Minimum Wage Class members is unknown to Plaintiff, upon information and belief the number is at least 50, such that joinder is impractical. The disposition of each Ohio Minimum Wage Class member's claims through the class action procedure will benefit the parties, the Court, and society as a whole.

56. Plaintiff will fairly and adequately represent and protect the Ohio Minimum Wage Class members' interests, and is committed to the vigorous prosecution of this action.

57. Plaintiff has no conflicts of interest and has retained counsel who is competent and has experience in class actions, including wage and hour class actions.

58. Plaintiff's claims are typical of the Ohio Minimum Wage Class member's claims. Plaintiff and the Ohio Minimum Wage Class members work or have worked for Defendant and have been subjected to Defendant's wage and hour policies and practices which create a pattern or practice of failing to pay minimum wages and timely wages. Ohio Minimum Wage Class members are victims of the same actions and conduct of Defendant.

59. Common questions of law and fact exist as to all members of the Ohio Minimum Wage Class and predominate over questions affecting individual members of the Ohio Minimum Wage Class.

60. The common questions include, but are not limited to, the following:

11

    i) Whether Defendant denied Cincinnati Ben-Gal cheerleaders minimum wage by, among other things, compelling them to attend practices, "charity events," and calendar photo shoots and promotional events without compensation;

    ii) Whether Defendant failed to pay Cincinnati Ben-Gal cheerleaders in a timely manner;

    iii) Whether Defendant's conduct was willful;

    iv) Whether Defendant's conduct as described above violates Article II, §34a of the Ohio Constitution governing payment of minimum wages;

    v) Whether Defendant's conduct as described above violates Article II, Section 34(a) of the Ohio Constitution governing an employers' duty to maintain records for each employee; and

    vi) Whether Defendant's conduct violates the Ohio Minimum Fair Wage Standards Act.

61. As noted above, Defendant has acted on grounds that apply generally to the Ohio Minimum Wage Class, so that final injunctive and/or declaratory relief is appropriate respecting the Ohio Minimum Wage Class as a whole.

62. A class action is appropriate because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Ohio Minimum Wage Class.

63. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action, as the financial interest of each individual Ohio

Minimum Wage Class member is relatively small, making it economically impracticable to pursue remedies other than by a class action. As such, the Ohio Minimum Wage Class members have little interest in individually controlling the prosecution of separate actions.

64. If individual actions were to be brought by the members of the Ohio Minimum Wage Class, the resulting duplication of lawsuits would cause undue hardship, inefficiencies, and expense to the Court and the litigants, and the nature of the claims is such that it is unlikely that many such claims would be pursued other than on a class basis.

65. Given the above considerations, it is desirable to concentrate the litigation of the claims in this particular forum.

66. Absent a class action, Defendant would likely retain the benefits of its wrongdoing, resulting in a miscarriage of justice.

67. There will be no difficulties in managing this class action as the names and addresses of the persons who are members of the Ohio Minimum Wage Class are available from Defendant. Further, notice can be provided to the members of the Ohio Minimum Wage Class by using techniques and a form of notice similar to those customarily used in class actions including individual mailed notice and notice by publication, as appropriate.

## VII. STATEMENT OF CLAIMS

### Count One

### Denial of Minimum Wages under the FLSA, 29 U.S.C. § 206

68. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

69. Defendant's denial of minimum wages for hours worked violates the FLSA, including but not limited to the minimum wage provisions of 29 U.S.C. § 206.

70. Plaintiff and members of the FLSA Class are entitled to recover from Defendant an appropriate amount for all hours worked, for a period of two years prior to the filing of this action, together with liquidated damages in an amount equal thereto, and attorney fees pursuant to 29 U.S.C. § 216(b).

## Count Two

### Willful violation of FLSA, 29 U.S.C. § 255(a)

71. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

72. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) such that Plaintiff and members of the FLSA Class are entitled to recover from Defendant an appropriate amount for all hours worked including minimum wages during the period beginning three years prior to the commencement of this action together with liquidated damages in an amount equal thereto and attorney fees pursuant to 29 U.S.C. § 216(b).

## Count Three

### Retaliation, under the FLSA, 29 U.S.C. § 215(a)(3)

73. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

74. Plaintiff and members of the FLSA Class are entitled to appropriate equitable relief pursuant to 29 U.S.C. §§ 215(a)(3) and 216(b), including without limitation an order enjoining Defendant from retaliating against Plaintiff or any other employees who may join in or assist this action or have sought or requested payment in accordance with applicable law.

## Count Four

### Denial of Minimum Wages under Article II, § 34a of the Ohio Constitution

75. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

76. Under the Article II, § 34a of the Ohio Constitution, Defendant was required to pay Plaintiff and members of the Ohio Minimum Wage Class the legally-required minimum wage for all hours worked.

77. Defendant's conduct as described above violates Article II, §34a of the Ohio Constitution governing payment of minimum wages.

78. Defendant has willfully and with reckless disregard deprived Plaintiff and members of the Ohio Minimum Wage Class of the payment of minimum wage compensation under Article II, § 34a of the Ohio Constitution, which entitles Plaintiff and others similarly situated to liquidated and/or punitive damages and other appropriate relief.

## Count Five

### Denial of Minimum Wages under the Ohio Minimum Fair Wage Standards Act

79. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

80. Under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.01 et seq., Defendant was required to pay Plaintiff and members of the Ohio Minimum Wage Class the legally-required minimum wage for all hours worked.

81. Defendant's conduct as described above violates the OMFWSA provisions governing payment of minimum wages.

82. Defendant has willfully and with reckless disregard deprived Plaintiff and members of the Ohio Minimum Wage Class of the payment of minimum wage compensation

under the OMFWSA, which entitles Plaintiff and others similarly situated to liquidated and/or punitive damages and other appropriate relief.

## Count Six

### Unjust Enrichment/ Quantum Meruit

83. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

84. Plaintiff and members of the Ohio Minimum Wage Class conferred a benefit upon Defendant when they worked hours and provided services to Defendant, and performed such other acts and conduct for Defendant's benefit.

85. The benefits were conferred by Plaintiff and members of the Ohio Minimum Wage Class without receiving just compensation from Defendant for the services rendered.

86. Defendant has been unjustly enriched by the benefits conferred by Plaintiff and members of the Ohio Minimum Wage Class.

87. Plaintiff and members of the Ohio Minimum Wage Class are entitled to just compensation for the reasonable value of services rendered to Defendant.

## Count Seven

### Failure to Pay Semi-monthly Wages Due, O.R.C. § 4113.15

88. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

89. During the three-year period preceding the filing of this Complaint, Defendant breached Ohio Revised Code Section § 4113.15(A) by failing to pay Plaintiff and members of the Ohio Minimum Wage Class (1) on or before the first day of each month for all wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and

(2) on or before the fifteenth day of each month all wages earned by them during the last half of the preceding calendar month.

90. Defendant is liable for the unpaid wages described above and for additional amounts as interest as provided by O.R.C. § 4113.15(B).

## Count Eight

**Failure to Maintain Wage and Hour Records, Article II, §34(a) of the Ohio Constitution**

91. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

92. Article II, Section 34a of the Ohio Constitution requires employers to maintain records for each employee showing that employee's name, address, occupation, pay rate, hours worked for each day worked, and each amount paid to an employee for a period of not less than three years following the last date that the employee was employed.

93. Because Defendant compensated Plaintiff and members of the Ohio Minimum Wage Class at a flat rate of either $90 or $45 per home football game, Defendant does not and did not maintain records for each employee showing that employee's name, address, occupation, pay rate, hours worked for each day worked, and each amount paid to an employee for a period of not less than three years following the last date that the employee was employed.

94. By failing to create, keep, and preserve proper wage and hour records, Defendant has violated Article II, Section 34a of the Ohio Constitution.

95. Defendant is liable for the attorney fees and costs of Plaintiff and members of the Ohio Minimum Wage Class incurred as a result of its failure to comply with Article II, Section 34a of the Ohio Constitution.

## Count Nine

### Failure to Maintain Wage and Hour Records, O.R.C. § 4111.08

96. Plaintiff repeats and reiterates the previous paragraphs as if fully rewritten herein.

97. Ohio Revised Code § 4111.08 requires Defendant to make and keep for a period of not less than three years a record of the name, address, and occupation of each of the employer's employees, the rate of pay and the amount paid each pay period to each employee, the hours worked each day and each work week by the employee.

98. Because Defendant compensated Plaintiff and members of the Ohio Minimum Wage Class at a flat rate of either $90 or $45 per home football game, Defendant does not and did not maintain records for each employee showing that employee's name, address, and occupation, the rate of pay and the amount paid each pay period to each employee, the hours worked each day and each work week by the employee.

99. By failing to create, keep, and preserve proper wage and hour records, Defendant has violated Ohio Revised Code § 4111.08.

100. Defendant is liable for the attorney fees and costs of Plaintiff and members of the Ohio Minimum Wage Class incurred as a result of its failure to comply with Ohio Revised Code § 4111.08.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and all other similarly situated employees of Defendant who elect to opt-in to this FLSA action as described with particularity in 29 U.S.C. § 216(b), and also those who are encompassed by the Rule 23 class definition described above in paragraph 54, demand judgment against the Defendant as follows:

1. An Order Permitting this litigation to proceed as a collective action;

2. Prompt notice, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees of Defendant that this litigation is pending and that they have right to "opt-in" to this litigation;

3. Judgment against Defendant for violating the Fair Labor Standards Act;

4. An Order declaring that the Defendant's violations of the Fair Labor Standards Act were willful;

5. An order enjoining Defendant from retaliating against Plaintiff or any other employees who may join in or assist this action or have sought or requested payment in accordance with applicable law;

6. An award of unpaid wages and liquidated damages thereon consistent with the provisions of the Fair Labor Standards Act;

7. An award of Plaintiff's reasonable attorneys' fees and costs;

8. With respect to the Ohio Minimum Wage Class:

    a. For an order certifying the Class, pursuant to Rule 23, appointing Plaintiff as representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

    b. An award of damages and liquidated damages;

    c. Pre-judgment and post-judgment interest, as provided by law;

    d. Such other injunctive and equitable relief as the Court may deem just and proper; and

    e. Reasonable costs and attorneys' fees.

9. Such other relief which in law and equity is appropriate.

Respectfully submitted,

**GOLDENBERG SCHNEIDER, LPA**

/s/Jeffrey S. Goldenberg
JEFFREY S. GOLDENBERG (Ohio Bar No. 0063771)
TODD B. NAYLOR (Ohio Bar No. 0068388)
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Telephone (513) 345-8291
Telecopier (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
Trial Attorneys for Plaintiffs

**MINNILLO & JENKINS, Co. LPA**

/s/Christian A. Jenkins
CHRISTIAN A. JENKINS (Ohio Bar No. 0070674)
JOHN J. WILLIAMS (Ohio Bar No. 0041466)
2712 Observatory Avenue
Cincinnati, Ohio 45208
Telephone (513) 723-1600
Telecopier (513) 723-1620
cjenkins@minnillojenkins.com
jjwilliams@minnillojenkins.com

### JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable in this matter.

/s/Todd B. Naylor
TODD B. NAYLOR (Ohio Bar No. 0068388)