# SETTLEMENT AGREEMENT
# BRENNEMAN ET AL. v. CINCINNATI BENGALS, INC.
# CASE NO. 1:14-CV-136
# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

## I. Introduction

This Settlement Agreement is made by and between Plaintiff Alexa Brenneman, on behalf of herself and on behalf of the proposed Class and Opt-In Class, and Defendant Cincinnati Bengals, Inc. for the sole purpose of settling the Lawsuit (as defined below) on a class-wide basis pursuant to Rule 23 of the Federal Rules of Civil Procedure with regard to all of Brenneman's claims under Ohio law and on a collective action basis under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). This Settlement Agreement is made in compromise of disputed claims. This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims upon the terms and conditions set forth below.

Because the Lawsuit is a class action and an opt-in collective action under the FLSA, this Settlement Agreement must receive preliminary and final approval by the Court. The Parties have agreed to resolve the Lawsuit by this Settlement Agreement, but to the extent it is not approved (or is cancelled by the Bengals, as provided herein), the Parties agree that each of them reserves all rights to pursue and/or challenge all claims, allegations, and defenses in the Lawsuit upon all procedural, legal, and factual grounds and to assert all claims, defenses, and privileges. Both Parties agree that the other Party retains these rights, and they agree not to take a position to the contrary.

## II. Contingency

This Settlement is contingent on Court approval of the Parties' joint motion for class certification of one class, as defined below.

### III. The Parties to this Settlement Agreement

This Settlement Agreement is made by and among the following Parties: (i) Brenneman on behalf of herself and as Class Representative on behalf of the proposed Class and Opt-in Class, all with the guidance and approval of Class Counsel; and (ii) the Bengals.

### IV. Factual Background, Claims in the Lawsuit, and the Benefits of Settlement

Like the majority of clubs in the National Football League ("NFL"), the Bengals include cheerleaders in their game-day experience. The cheerleading squad known as the Ben-Gals has been part of Cincinnati's professional football tradition for decades.

Ben-Gal cheerleaders are involved in three primary activities: they appear at Paul Brown Stadium for Bengals home games, they attend cheerleader practices during the week, and they occasionally attend events sponsored by other businesses or non-profit organizations.

During the 2011, 2012, and 2013 NFL seasons, the Bengals paid each cheerleader a fixed amount for each home game at which she appeared. Cheerleaders who were designated as "captains" received higher amounts. Beginning with the 2014 NFL season, and after the filing of this Lawsuit, the pay structure for the Ben-Gals was changed to include additional payments by the Bengals.

On occasion during the relevant timeframe, the Bengals also made additional payments to cheerleaders for their attendance at certain outside events. For certain other event appearances, Ben-Gal cheerleaders were paid by 1 Cheer, LLC ("1 Cheer"). 1 Cheer is operated and wholly owned by Charlotte Simons ("Simons"), a former Ben-Gal cheerleader who now organizes and leads the Ben-Gals cheerleader program.

Brenneman was a Ben-Gal cheerleader during the 2013 NFL season. She filed the Lawsuit in February 2014 claiming that her pay as a Ben-Gal fell below the minimum wage as provided under federal law (29 U.S.C. § 201 *et seq.*) and Ohio law (Article II, Section 34a of the

Ohio Constitution and Ohio Revised Code § 4111.01 *et seq.*). Brenneman also asserted constitutional, statutory, and common law claims related to wage payments and recordkeeping. (Amended Complaint, Dkt. #5)

Brenneman asserted claims on her own behalf, on behalf of a proposed class of Ben-Gal cheerleaders under Rule 23 of the Federal Rules of Civil Procedure, and on behalf of a proposed group of opt-in plaintiffs under the FLSA. Following notice by the Court, current and former Ben-Gal cheerleaders (dating back to February 11, 2011) were given sixty (60) days to file opt-in notices if they wished to join the Lawsuit as party plaintiffs. During the opt-in period, six former Ben-Gals filed opt-in notices (the "Opt-In Class"). (Dkt. #20-1, 21-1, 23-1, 26-1)

Brenneman and Class Counsel believe that the claims they have asserted in the Lawsuit have merit, and they believe that evidence developed to date supports those claims. However, Brenneman and Class Counsel recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute the Lawsuit against the Bengals through additional discovery, motion practice, trial, and appeals. Brenneman and Class Counsel also recognize that the Bengals have asserted defenses to their claims – including defenses based on the payments made to Class Members by 1 Cheer, LLC for Ben-Gals appearances at outside events. In addition, Brenneman and Class Counsel have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in any litigation.

Brenneman and Class Counsel believe that this Settlement confers substantial benefits upon Brenneman, the Opt-in Class, and the Class in light of these and other factors. Based upon their evaluation, Brenneman and Class Counsel have determined that the Settlement is fair, adequate, reasonable, and in the best interest of the Class.

3

### V. The Bengals' Denial of Wrongdoing or Liability and the Benefits of Settlement

The Bengals denied all of the material claims and contentions in the Lawsuit, and the Bengals believe that the evidence supports their position – including evidence relating to the payments made to Class Members by 1 Cheer, LLC for Ben-Gal appearances at outside events. Nonetheless, the Bengals have concluded that further conduct of the Lawsuit would be protracted and expensive. The Bengals have taken into account the uncertainty and risks inherent in any litigation. The Bengals have therefore determined that it is desirable and beneficial that the Litigation be settled by the terms and conditions in this Settlement Agreement.

### VI. Terms of Settlement Agreement

It is agreed by and between Brenneman, as a class representative, and the Bengals, with the assistance of their respective counsel, that the Lawsuit and the Released Claims shall be fully and finally compromised, settled, and released; the Lawsuit shall be dismissed with prejudice; and the Settlement will be implemented upon and subject to the terms and conditions of the Settlement and upon entry of the Judgment.

**1. Definitions**

1.1 The "Bengals" means Cincinnati Bengals, Inc., the Defendant in the Lawsuit.

1.2 The "Bengals Releasees" means the Cincinnati Bengals, Inc. and 1 Cheer, LLC as well as each of their subsidiaries, affiliates, successors, assigns, and each of these entities' past or present directors, officers, employees, partners, members, owners, principals, fiduciaries, administrators, agents, underwriters, insurers, co-insurers, reinsurers, shareholders, attorneys, accountants, auditors, and personal or legal representatives.

1.3 "Brenneman" means Plaintiff Alexa Brenneman, on behalf of herself and as class representative on behalf of the proposed Class, if certified.

4

1.4  "Class" means all persons who were employed by the Bengals as Ben-Gals cheerleaders at any time from February 11, 2011 through January 31, 2014.

1.5  "Class Counsel" means the law firms of Goldenberg Schneider, LPA (and attorneys Jeffrey S. Goldenberg and Todd B. Naylor in particular) and Minnillo & Jenkins Co., LPA (and attorney Christian A. Jenkins).

1.6  "Class Member" means a person who is a member of the proposed Class.

1.7  "Class Notice" means a notice entitled "Notice To Class Members Regarding The Settlement Of The Class Action and Collective Action and Notice Of Hearing On Proposed Settlement" to be approved by the Court.

1.8  "Clerk of Court" means the Clerk of Court for the United States District Court, Southern District of Ohio.

1.9  "Court" means the United States District Court for the Southern District of Ohio.

1.10  "Effective Date" means the date on which the Judgment entered by the Court becomes final, including the expiration of any appeal periods or the final resolution of any appeals that are taken.

1.11  "Joint Motion for Preliminary Approval of Class Action and Collective Action Settlement Agreement and Proposed Notice" means a joint motion filed with the Court to have the Court preliminarily approve this Settlement, and to enter the Preliminary Approval Order, and to approve a Class Notice to be served on Class Members.

1.12  "Judgment" means the judgment rendered by the Court approving this Settlement in its entirety without material change (unless the Parties have expressly consented to such changes in writing).

5

1.13  "Last Known Address" means the most recent mailing address for a Class Member as such information is contained in the records maintained by the Bengals.

1.14  The "Lawsuit" shall mean the action styled *Brenneman v. Cincinnati Bengals, Inc.*, Case No. 1:14cv00136, currently pending in the United States District Court for the Southern District of Ohio.

1.15  "Notice Administrator" means the administrator (if any) responsible for mailing of certain notices pursuant to this Settlement.

1.16  "Notice Mailing Deadline" shall be the date seven (7) days after the Preliminary Approval Date (unless otherwise stated in the Preliminary Approval Order).

1.17  "Notice Response Deadline" shall be the date forty-five (45) days after the Class Notice is mailed to the Class Members.

1.18  "Opt-In Class" means all persons who filed opt-in notices with the Court in the Lawsuit.

1.19  "Parties" means Brenneman and the Bengals.

1.20  "Plaintiffs" means Brenneman, the Opt-in Class, and all Class Members.

1.21  "Preliminary Approval Date" shall mean the date on which the Court enters the Preliminary Approval Order.

1.22  "Preliminary Approval Order" shall mean that Order described in Section 5.1.2.

1.23  "Released Claims" shall mean all claims, known or unknown, by Brenneman, all members of the Opt-in Class, and all Class Members, for any type of relief against the Bengals Releasees for declaratory relief, wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, or any other monetary remedy, as well as injunctive relief, restitution, or other equitable relief

related to or arising out of the claims alleged in the Amended Complaint filed in the Lawsuit (Dkt.# 5).

1.24   "Settlement Hearing" or "Fairness and Good Faith Determination Hearing" means a hearing set by the Court to take place after the Notice Response Deadline for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Settlement pursuant to class action procedures and requirements, including the determination of attorneys' fees, expense reimbursement, and an incentive award; (ii) determining the good faith of the Settlement; and (iii) entering Judgment.

## 2.   Consideration to Class Members

2.1   *Payments Based on Seasons Worked as Ben-Gals Cheerleaders*

Within fourteen (14) days after the Effective Date, the Bengals will provide certain payments for the benefit of Class Members. Payments for each of the Class Members who do not opt out of this Settlement will be calculated as follows: for each NFL season during which a Class Member worked for the Bengals as a Ben-Gal cheerleader during the relevant time period (*i.e.,* February 11, 2011 through January 31, 2014), the Bengals will pay that Class Member the gross amount of two thousand five hundred dollars ($2,500.00). Thus, for example, if a Class Member worked for the Bengals as a Ben-Gal cheerleader during three (3) NFL seasons during the relevant time period, that Class Member would receive payment in the gross amount of seven thousand five hundred dollars ($7,500.00).

The Parties agree that according to documents provided by the Bengals in discovery, during the relevant time period, the sum of the NFL seasons during which all individual Class Members combined worked for the Bengals as Ben-Gal cheerleaders is a total of one hundred and two (102). Thus, the total gross amount of payments under this Section 2.1 is two hundred

7

fifty-five thousand dollars ($255,000.00). If any Class Members opt out of this settlement, the total amount payable to the Class under this Agreement shall remain $255,000, with the amounts that would have been paid under this Agreement to such opt-outs being distributed pro rata to the remaining Class Members according to the number of seasons worked during the relevant time period. By way of example, if two Class Members who each worked three seasons during the relevant time period opt out, the total number of combined seasons would be reduced from 102 to 96 and each Class Member would receive $2,656.25 for each season worked (*i.e.,* $255,000 ÷ 96 = $2,656.26).

All portions of such payments shall be treated as wages. The Bengals will pay all employer payroll taxes and related employer contributions in addition to the $255,000.00 including but not limited to employer social security contributions, will process all associated withholdings, and will report such payments using IRS form W-2.

Payments under this Section 2.1 shall be sent by the Bengals or the Notice Administrator directly to the Class Members via first class mail through the United States Postal Service, postage pre-paid.

Payment checks to be issued under this Section 2.1 shall be valid for ninety (90) days from the date of mailing. If any payment checks are unclaimed, returned, or uncashed after that ninety-day period, those checks will be cancelled at the Bengals' expense. In such event, should the total gross dollar amount of unclaimed, returned, and/or uncashed checks be five thousand dollars ($5,000.00) or more, the total gross dollar amount of unclaimed, returned, and/or uncashed checks shall then be redistributed as wages among the other Class Members in proportional shares with any amounts then remaining uncashed or unclaimed payable to a nonprofit organization selected by Brenneman, subject to the Court's approval; should the total

8

gross dollar amount of unclaimed, returned, and/or uncashed checks be less than five thousand dollars ($5,000.00), the total gross dollar amount of unclaimed, returned, and/or uncashed checks shall then be paid to a nonprofit organization selected by Brenneman, subject to the Court's approval.

2.2  *Incentive Award to Brenneman*

Within fourteen (14) days after the Effective Date, and in addition to her Settlement payment, the Bengals will pay Brenneman five thousand dollars ($5,000.00) for her role as named plaintiff and class representative. Brenneman shall be solely and individually responsible for all tax obligations and consequences, and the Bengals will report such payment using IRS form 1099.

2.3  *Attorney Fees*

Brenneman, the Opt-in Class, and the Class shall be deemed the prevailing parties in this Litigation solely for the purpose of and to the extent necessary to support an award of attorney fees to Class Counsel. Within fourteen (14) days after the Effective Date, the Bengals will pay Class Counsel the reasonable attorney fees they have incurred in connection with the Lawsuit, as determined by the Court upon application by Class Counsel. Brenneman and Class Counsel, on behalf of themselves and all Class Members, if the Class is certified, agree that they shall not seek nor be entitled to any additional attorney fees or costs from the Bengals under any theory related in any way to the Lawsuit or the subject matter of the Lawsuit. Brenneman and Class Counsel agree that they shall be responsible for filing with the Court any pleadings or other submissions necessary to obtain the approval of the Court for the payment of attorney fees and costs. Payments made pursuant to this paragraph shall constitute full satisfaction of any claim against the Bengals or any of the Bengals Releasees by Brenneman, the Opt-in Class, any other

9

Class Member, or Class Counsel for fees and costs related to the Lawsuit and the subject matter of the Lawsuit.

### 3. The Bengals' Contingent Option to Cancel the Settlement

3.1 If Class Members who opt out of the proposed settlement represent six (6) or more of the one hundred and two (102) NFL seasons during which all individual Class Members combined worked for the Bengals as Ben-Gal cheerleaders, then the Bengals shall have the option (at the Bengals' sole discretion) of voiding and cancelling the proposed settlement altogether. The Bengals may exercise this contingent option by providing notice to the Court and to counsel for the putative class within ten (10) business days of the end of the opt-out period.

For example, if two (2) class members who were each Ben-Gal cheerleaders for two (2) NFL seasons filed opt-out notices, the Bengals' option to cancel the proposed settlement would not become effective; however, if two (2) class members who were each Ben-Gal cheerleaders for three (3) NFL seasons filed opt-out notices, the Bengals' option to cancel this proposed settlement would become effective.

In the event the Bengals exercise this contingent option to cancel the proposed settlement, the proposed settlement will be of no effect, the Settlement Class will be dissolved, and the parties will resume litigation of this dispute, with both Parties reserving all rights as to the prosecution and defense of the claims in the case and the propriety of class treatment under Fed. R. Civ. P. 23.

3.1.2 The Parties agree that neither they nor their counsel will solicit, encourage, or seek to induce any Class Member to opt out of this settlement.

### 4. Release of the Bengals Releasees

4.1 *Released Claims*

10

4.1.1 Upon the Effective Date, Brenneman, each of the Opt-in Class members, and each of the Class Members shall have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Claims against any of the Bengals Releasees.

This Release does not release claims by Class Members to enforce this Settlement Agreement or the Judgment.

4.1.2 With respect to any and all Released Claims, Brenneman, each of the Opt-in Class members, and each of the Class Members will be releasing all Released Claims as defined in 1.23, above. Brenneman acknowledges, and each of the Opt-In Class members and Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for as a key element of the Settlement of which this release is a material part.

## 5. Procedure for Court Approval

5.1 *Procedure for Class Certification*

5.1.1 On November 7, 2014, Brenneman moved for class certification under Fed. R. Civ. P. 23 for the class as defined in Section 1.14 above. In the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice, the Bengals shall consent to the certification of the Class for settlement purposes as provided in this Settlement Agreement.

5.1.2 Via the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Proposed Notice, the Parties will request that the Court enter the Preliminary Approval Order scheduling the Settlement Hearing for the purposes of determining the fairness, reasonableness, and adequacy of the Settlement in connection with granting final approval of the Settlement and entering Judgment.

5.1.3 If the Court enters the Preliminary Approval Order, then at or before the resulting Settlement Hearing, Brenneman and the Bengals through their counsel shall endeavor in good

faith to address any written objections, if any, from Class Members or any issues or concerns expressed by Class Members who testify at the Settlement Hearing. They further shall endeavor in good faith to address any issues or concerns expressed by the Court, if any, during such Settlement Hearing.

5.2   *Notice to Class Members*

5.2.1   If, by entering the Preliminary Approval Order, the Court provides authorization to send a Class Notice to Class Members, the Bengals or their Notice Administrator will mail the Class Notice to all Class Members on or before the Notice Mailing Deadline. This Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

5.2.2   This Class Notice and its envelope or covering shall be marked to denote the return address designated by Class Counsel and counsel for the Bengals.

5.2.3   The Bengals or the Notice Administrator shall prepare a list of the names and last known addresses for each Class Member so that they can engage in the processing and mailing of each Class Notice. The Bengals or the Notice Administrator shall process the list of names and addresses through the United States Postal Service National Change of Address database. This process updates addresses for individuals who have moved within the last four years and who filed a change of address card with the United States Postal Service ("USPS").

This information shall also be provided to Class Counsel who will have the opportunity to review it for accuracy and to provide the Bengals with updated information to the extent Class Counsel is in possession of such information. The Parties agree that by preliminarily approving this Settlement, the Court will have authorized this information transfer.

12

5.2.4 Unless the parties agree otherwise in writing or the Court so orders, each Class Notice shall be mailed to the Last Known Addresses of the Class Members no later than the Notice Mailing Deadline.

5.2.5 The Bengals shall be responsible for all costs of the mailing described in Section 5.2.1, which shall include the fees charged by the Notice Administrator (if any), the cost of the envelope in which the Class Notice will be mailed, the cost of reproducing the Class Notice, and the cost of postage to send the Class Notice. Brenneman acknowledges that the Bengals' agreement to pay the notice administration and mailing costs constitutes additional consideration to the Class Members.

5.2.6 Unless the Bengals or the Notice Administrator receive a Class Notice returned from the United States Postal Service for reasons discussed below in this paragraph, that Class Notice shall be deemed received by the Class Member to whom it was sent three days after mailing. In the event that subsequent to the first mailing of a Class Notice Action and prior to the deadline for a response, a Class Notice is returned to the Bengals or the Notice Administrator by the United States Postal Service with a forwarding address for the recipient, the Bengals or the Notice Administrator shall re-mail the notice to that address, and the forwarding address shall be deemed the Updated Address for that Class Member. The Class Notice shall be deemed received upon mailing once it is mailed for the second time. In the event that subsequent to the mailing of any Class Notice, and at least fourteen (14) days prior to the Notice Response Deadline, a Notice is returned to the Bengals or the Notice Administrator by the United States Postal Service because the address of the recipient is no longer valid, *e.g.*, the envelope is marked "Return to Sender," and with no forwarding address, the Bengals or the Notice Administrator shall again undertake reasonable secondary address verification measures (*i.e.*, a skip trace procedure) to

13

attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Bengals or the Notice Administrator will re-send the Notice as promptly as possible and in any event within fourteen (14) days of receiving such information. In either event, the Notice regarding Settlement of the Class Action shall be deemed received once it is mailed for the second time. In the event a Class Notice is returned as undeliverable, the Bengals or the Notice Administrator will promptly notify Class Counsel of the name and the Last Known Address of the Class Member. To the extent Class Counsel ascertains another address for the Class Member, the Bengals or the Notice Administrator will mail the Class Notice to this address.

The Bengals or the Notice Administrator will advise the Court and the Parties of all returned Class Notices as well as the action the Bengals or the Notice Administrator took on each such Class Notice. Each Class Notice will include a change of address form to be used by a Class Member who desires to update or change his or her mailing address by providing written notice to Class Counsel, who shall promptly provide the updated address to the Bengals.

5.3     *Responses to the Class Notice and the Motion for Final Approval*

5.3.1 Class Members and Opt-in Class members have whatever rights are granted to them under federal law to opt out of the Settlement, to file written objections to the Settlement at their own expense on or before the Notice Response Deadline (unless otherwise provided in the Preliminary Approval Order), and to appear at the Settlement Hearing. The Class Notice will advise Class Members and Opt-in Class members of this option and that all opt-out notices and all objections must be in writing, that any opt-out notices or objections not post-marked on or before the Notice Response Deadline and/or filed in writing are of no effect, and that Class

Members or Opt-in Class members who file opt-out notices or objections shall be responsible for their attorney fees or costs, if any, incurred in connection with such opt-out notices or objections.

5.3.2 Prior to the Settlement Hearing and consistent with the instructions of the Court, Brenneman shall move the Court for entry of the Order of Final Approval (and the associated entry of Judgment).

5.4 *Notice Administrator*

5.4.1 The Bengals may act as Notice Administrator, or they may hire a Notice Administrator. The Bengals shall be responsible for the fees and expenses reasonably incurred by the Notice Administrator as a result of procedures and processes expressly required by this Settlement. Brenneman, the Class, and Class Counsel shall have no responsibility for any fees or expenses incurred by the Notice Administrator.

5.4.2 The actions of the Notice Administrator shall be governed by the terms of this Settlement. The Bengals may provide relevant information needed by the Notice Administrator per this Settlement, provide instructions to the Notice Administrator with regard to actions required by this Settlement, and engage in related communications with the Notice Administrator without notice or copies to Class Counsel, any Class Members, or the Court. However, communications with Class Members regarding notices and responses to notices will be shared with Class Counsel, and the Bengals, Class Counsel, and the Notice Administrator shall cooperate in establishing a procedure for answering inquiries by Class Members.

### 6. Class Action Fairness Act Provisions

6.1 No more than ten (10) days after filing the Motion for Preliminary Approval of Class Action and Collective Action Settlement Agreement and a copy of this Settlement Agreement with the Court, the Bengals will serve on the Attorney General of the United States, the Secretary

15

of Labor of the United States, the Office of the Attorney General for each state in which a Class Member resides, and the state department of labor for each state in which a Class Member resides, a copy of the following: (a) the complaint and amended complaint in the Lawsuit; (b) the motion for preliminary approval of the settlement, including the proposed date for the Fairness Hearing; (c) the Settlement Agreement; and (d) a list of the Class Members by state of residence and the percentage share of the Class Members in each State.

6.2     The Parties agree that the Settlement Hearing will not take place until 90 days after the Bengals have provided the notices contemplated by Section 6.1. The Parties further agree that it is their intent that the Bengals satisfy the government notice provisions of the Class Action Fairness Act of 2005; Brenneman and Class Counsel, on behalf of the Class, agree also that they will cooperate with the Bengals to make any reasonable changes in the terms or procedures set forth in this Settlement to facilitate such compliance.

6.3     Brenneman and Class Counsel agree that these measures set forth in this Section 6 will satisfy the notice requirement of the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715(b) in particular, and that no Class Member who does not opt-out may seek to avoid the binding effect of the Judgment under the terms of the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715(b), and by operation of the Judgment, all Class Members waive their rights to do so.

7.     **Miscellaneous Provisions**

7.1     Notwithstanding any other provision of this Settlement, no order of the Court reducing, or modification or reversal on appeal of any order of the Court reducing, the amount of any attorney fees or costs to be paid by the Bengals to Class Counsel shall constitute grounds for cancellation or termination of the Settlement or grounds for limiting any other provision of the Judgment.

7.2     The Parties (a) acknowledge that it is their intent to consummate this Settlement, (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement, and (c) agree to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement.

7.3     The Settlement compromises claims that are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense. The Parties agree that the terms of the Settlement were negotiated in good faith by them and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

7.4     Neither the Settlement, nor any act performed or document executed in furtherance of the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of any of the Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

7.5     The Settlement may be amended or modified only by a written instrument signed by or on behalf of the Bengals, Brenneman, and the Class Counsel, or their respective successors-in-interest.

7.6     The Settlement constitutes the entire agreement among the Parties hereto. No representations, warranties, or inducements have been made to any party concerning the Settlement other than the representations, warranties, and covenants contained and memorialized in this document. Except as otherwise provided herein, each Party shall bear its own costs.

7.7     Class Counsel, on behalf of the proposed Class, are expressly authorized by Brenneman to take all appropriate action required or permitted to be taken pursuant to the Settlement to

17

effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement on behalf of the proposed Class that they deem appropriate, subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005.

7.8   Each counsel or other person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such counsel or other person has the full authority to do so.

7.9   The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

7.10   The Settlement shall be binding upon and inure to the benefit of the successors and assigns of the Parties; but this Settlement is not designed to and does not create any third party beneficiaries except for the Bengals Releasees, who are intended to be third party beneficiaries.

7.11   The Court shall retain jurisdiction with respect to implementation, administration, and enforcement of the terms of the Settlement, and all Parties submit to the jurisdiction of the Court for purposes of implementing, administering, and enforcing the Settlement.

7.12   The Settlement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Ohio, and the rights and obligations of the parties to the Settlement shall be construed and enforced in accordance with and governed by the substantive laws of the United States and the State of Ohio without giving effect to the State of Ohio's choice of law principles.

7.13   The language of all parts of this Settlement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No Party shall be deemed the drafter of this Settlement. The Parties acknowledge that the terms of the Settlement

are contractual and are the product of negotiations between the Parties, by or with the assistance of their counsel. Each Party through their counsel cooperated in the drafting and preparation of the Settlement. The Parties hereto have caused the Settlement to be executed.

DATED: 8/25/15

_____
Alexa Brenneman, Individually and as Class Representative

Defendant

CINCINNATI BENGALS, INC.

By: _____

CLASS COUNSEL

_____
Jeffrey S. Goldenberg
Todd B. Naylor
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, OH 45202

COUNSEL FOR
CINCINNATI BENGALS, INC.

_____
W. Stuart Dornette
Justin D. Flamm
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

_____ per authority
Christian A. Jenkins
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, OH 45208

19

are contractual and are the product of negotiations between the Parties, by or with the assistance of their counsel. Each Party through their counsel cooperated in the drafting and preparation of the Settlement. The Parties hereto have caused the Settlement to be executed.

DATED: _____

_____
Alexa Brenneman, Individually and as Class Representative

Defendant

CINCINNATI BENGALS, INC.

By: _____

CLASS COUNSEL

COUNSEL FOR
CINCINNATI BENGALS, INC.

_____
Jeffrey S. Goldenberg
Todd B. Naylor
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, OH 45202

_____
W. Stuart Dornette
Justin D. Flamm
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

_____
Christian A. Jenkins
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, OH 45208